IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIME INSURANCE COMPANY** § | | **PLAINTIFF** |
| § | | |
| v. § | | **Civil Action No. 1:08cv16HSO-JMR** |
| § | | |
| **PATSY WHITE and THE ESTATE OF** § | | |
| **LARRYE J. WHITE** § | | **DEFENDANTS** |
| | | |
| **PATSY WHITE and THE ESTATE OF** § | | **COUNTER PLAINTIFFS** |
| **LARRYE J. WHITE** § | | |
| § | | |
| v. § | | **Civil Action No. 1:08cv16HSO-JMR** |
| § | | |
| **TIME INSURANCE COMPANY** § | | **COUNTER DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING TIME INSURANCE
COMPANY'S MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion [155] of Plaintiff/Counter-Defendant Time Insurance Company ("Time") for Summary Judgment, filed on or about October 18, 2010, in the above captioned cause. Defendants/Counter-Plaintiffs Patsy White and the Estate of Larrye J. White ("the Whites") have filed a Response [161], and Time a Reply [163]. After consideration of the submissions, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Time's Motion should be granted.

I. BACKGROUND

Time filed its Complaint [1] on or about January 16, 2008, seeking a declaration of its contractual rights and obligations pursuant to a health insurance certificate issued to Larrye J. White. Larrye White answered, and asserted a

-1-

Counterclaim [5] against Time for its alleged refusal to pay benefits owing under the contract. Time sought judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c), on grounds that it fulfilled its payment obligations for Larrye White's chemotherapy treatments under the terms of health insurance certificate No. 0058461251, effective June 2005. Time claimed the certificate limited payment for outpatient services to $2,500.00 per year, with a calendar year maximum of $100,000.00. Larrye White disputed that certificate No. 0058461251 was the original policy issued to him in June 2005. He maintained that it was sent to him subsequently in 2007, after the original policy was lost on August 29, 2005, in Hurricane Katrina.

By Order [86] dated December 10, 2008, this Court granted judgment in favor of Time on grounds that Larrye White admitted in his Answer that "effective June 1, 2005, the Defendant was issued a health insurance certificate, No. 0058461251, by Fortis Insurance Company," which, the Court found, unambiguously limited Time's yearly liability for covered outpatient services, including hospital and healthcare practitioner services, to $2,500.00. On appeal, the United States Court of Appeals for the Fifth Circuit vacated this Court's judgment on grounds that the case was prematurely dismissed, and remanded the case for further discovery. The Fifth Circuit did not address whether the policy was ambiguous.

Upon remand, Larrye White filed an Amended Answer and Counterclaim [101] against Time. On April 6, 2010, Time filed an Amended Complaint [108],

naming Patsy White as an additional Defendant. Patsy White alleged that Time refused to pay certain benefits owed to her, and had refused to remove a policy rider applicable to her.  The Whites countered, asserting claims of fraud, misrepresentation, negligence, bad faith, estoppel, intentional infliction of emotional distress, and breach of contract.  Counterclm. [109].  Upon Larrye White's subsequent death, the Estate of Larrye J. White was substituted as a Defendant. Time now moves for summary judgment on the Whites' claims against it, and seeks a declaratory judgment in its favor.

## II.  DISCUSSION

A.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," it is important to remember that only those disputes of fact which

might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Id.* (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial." *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Shields v. Twiss,* 389 F.3d 142, 149-50 (5th Cir. 2004) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson*, 477 U.S. at 249. The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *Gaddis v. Smith & Nephew, Inc.,* 534 F. Supp. 2d 697, 699 (S.D. Miss. 2008).

Because the Court's jurisdiction in this case is premised upon diversity of citizenship, the Court must apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938); *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international

law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.  <u>Whether Health Insurance Certificate No. 0058461251 is the Correct Policy</u>

According to Time, it issued health certificate No. 0058461251 to the Whites in 2005, and it is the operative policy in this case. In support of this position, Time has adduced evidence that it received via facsimile an application from the Whites on May 25, 2005, containing a quote for insurance from Time. Decl. D. Krejci and Ex. "A" to Decl., attached as Ex. to Time's Mot. The first page of the seven page fax reflects a $2,500.00 yearly outpatient maximum, and an annual maximum of $100,000.00. *Id*. Subsequent pages contain signatures of both Larrye White and Patsy White. *Id*. Each page of the fax reflects that it was transmitted on May 25, 2005, from the Whites' business fax machine. *Id.;* L. White Dep. at p. 21, attached as Ex. "B" to Decl. K. Rogers, attached as Ex. to Time's Mot. Each page is sequentially numbered (001/007 . . . 007/007). Krejci and Ex. "A" to Decl., attached as Ex. to Time's Mot.

Time has also produced evidence that faxes are received by it through a special computer and software system. Decl. E. Kegel, attached as Ex. to Time's Mot. Time's software, "RightFax," automatically converts faxes to an electronic file, which is stored in Time's archiving system, "FileNet." *Id*. Neither RightFax nor FileNet permits modifications or deletions to be made to the pages of a fax once it is entered into the system. *Id*. In 2005, faxed applications were unalterably stored on

FileNet exactly as they were received by Time. *Id*. The seven page fax dated May 25, 2005, was archived in FileNet. *Id*.

On May 26, 2005, the Whites telephoned Time for their initial medical history interview, which was required for underwriting the application. Decl. D. Krejci, attached as Ex. to Time's Mot. The Whites provided additional medical information via telephone on June 1, 2005. *Id*. Based upon the information provided by the Whites, Time offered to provide the coverage reflected in the White's initial application on May 25, 2005, subject to some additional conditions. *Id*. Time excluded all treatment relating to Larrye White's allergies and all treatment relating to Patsy White's asthma. *Id*. Time also increased the premium payment from $430.14 per month to $519.06 per month based upon Patsy White's health. *Id*. These riders were sent to the Whites for review, and were returned signed on June 8, 2005. *Id*.; P. White Dep. P. 17-18., attached as Ex. "C" to K. Rogers Decl., attached as Ex. to Time's Mot.

Time's records reflect that on June 15, 2005, it sent Albert Small, the Whites' insurance agent, an insurance packet to be delivered to the Whites. D. Krejci Decl., attached as Ex. to Time's Mot. The packet included policy No. 0058461251, which reflected a $2,500.00 maximum limit per year on outpatient services, as well as a $100,000.00 calendar year maximum benefit per insured. *Id*. The packet also included an Acceptance of Offer and Attestation form for the Whites' signatures. *Id*. The Whites signed and returned the Acceptance of Offer and Attestation forms on

July 27, 2005. *Id.* All documents, including the signed Acceptance of Offer and Attestation form, were archived in Time's computer system. *Id.*

Time contends that the original policy issued to the Whites in 2005 has been electronically maintained in its system. Mem. in Supp. of Mot. at p. 20; Decl. D. Washinby, attached as Ex. to Time's Mot. Because the policy itself is the best evidence of its own contents, and because Time's original of the policy still exists, Time argues that secondary evidence is inadmissable. *Id.* "To prove the content of a writing, . . . the original writing . . . is required . . . ." FED. R. EVID. 1002. Pursuant to FED. R. EVID. 1001, "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" FED. R. EVID. 1001(3).

There is no serious dispute here that the Whites' copy of the policy is unavailable. In response to Time's Motion, the Whites have not produced any persuasive evidence to establish that Time's computer software program is faulty or inaccurate. Instead they counter that the policy originally issued in 2005 did not contain an outpatient cap or calendar year maximum. The Whites offer secondary evidence in support of their position, including an affidavit and interrogatory answers from Small.[1] However, even if the Court were to consider this secondary evidence, it is not sufficient to carry the Whites' summary judgment burden.

In Mississippi, "[t]he burden of proving coverage rests with the insured."

---

[1] Small was a Third-Party Defendant and Counter-Plaintiff to this lawsuit, but was later dismissed. Ct. Orders [85], [87].

*Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010). "Under Mississippi law, parties may use parol evidence to prove that a contract existed and to prove its terms, where the writing has been destroyed or lost." *JP Morgan Chase Bank, N.A., v. Lott*, No. 5:06cv102, 2007 WL 30271, at *4 (S.D. Miss. Jan. 3, 2007) (*citing Banks v. Mitsubishi Motors Credit of America, Inc.*, 435 F.3d 538, 540 (5th Cir. 2005)). In order to recover on a contract that a party cannot produce, the party must demonstrate both (a) the document's former existence and its present unavailability; and (b) the document's contents. *Id.* (*citing Banks*, 435 F.3d at 540). Secondary evidence is admissible to show the terms of an unavailable contract under FED. R. EVID. 1004, where the original contract has not been lost or destroyed in bad faith. FED.R. EVID. 1004; *see also Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130, 1132 (5th Cir. 1992). Bad faith is not at issue here.

Taking the Whites' secondary evidence into account, Small's responses to written discovery[2] state that:

> [a]s of May 1, 2005, the only Time Ins. Co. plan I was aware of was called the "Value Plan" and the information I had from Time showed "no cap" for outpatient services for that plan. That was the plan for which I faxed an application to Mr. White in May, 2005. Later, Time initiated the "Right Choice" product, which showed a cap of $2,500.00 on outpatient services, but that was not sent to Mr. White and was not even available in May or June, 2005.
>
> * * *

---

[2] To the extent the Whites rely upon Small's unsworn Answer, it is not competent summary judgment evidence and will not be considered by the Court. *See, e.g., Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir. 1991).

> I was not aware of any calendar year maximum; the only maximum I was aware of in May, 2005, was a lifetime maximum of $2,000,000.00 per person.

Small Ans. to Interrogs., attached as Ex. "4" to Whites' Resp. The Whites offer Small's affidavit, wherein Small disputes that the policy advanced by Time was the policy originally issued to the Whites. Small Aff., attached as Ex. "5' to Whites' Resp. The affidavit also state that:

> [e]ven if Time were to demonstrate that the Certificate of Insurance attached to its Complaint is a true and correct copy of the one initially issued to White, such issuance as is indicated on the Certificate was incorrectly issued, since it did not comply with the application I sent White and that White sent Time.

*Id*.

      The Court is not persuaded that this evidence sufficiently proves the contents of the missing policy, or creates a material fact question that the policy Time claims controlled was not the actual policy. Though not controlling, the Court finds the Sixth Circuit's opinion in *Harrow Products, Inc. v. Liberty Mutual Insurance Co.*, 64 F.3d 1015 (6th Cir. 1995), persuasive. There, the insured argued that missing policies entitled it to defense and indemnification coverage from the insurer on grounds that those missing policies did not contain pollution exclusions. In support of its position, the insured submitted an affidavit from one of its employees. He stated that he was responsible for the purchase of insurance policies for the insured, and that the liability policies the insured always purchased, with one exception not relevant to the case, had no riders or exclusions. *Id*. at 1021. The Sixth Circuit, in holding that the affidavit was insufficient to establish the contents of the missing

policies, stated:

> [o]f course, we cannot state that a party can never prove the terms of the policy without a copy of the policy or a reasonable facsimile thereof. But the party trying to do so certainly faces a formidable burden. Here no jury could find, absent sheer speculation, the scope of coverage, the relevant notice requirements, and all of the other aspects of the policy, on which coverage often hinges. Nor can [the insured] rely on some contemporaneous version of the policy that it has secured from other parties, or from [the insurers], absent some clear link, such as there being only one version of the policy, direct testimony linking the sample policy to the one issued, or solely cosmetic differences between versions. The very fact that there are different versions undermines [the insured's] claim.

*Id.* Here, as in *Harrow*, the evidence and arguments advanced by the Whites offer "little more than the assertion that [they] had insurance." *Id.*

In addition to Small's attestations, the Whites have submitted six exemplar policies which Time was marketing and selling in May and June 2005, and which do not contain outpatient services caps or calendar year maximums. Exemplar Policies, attached as Exs. "20-25" of Whites' Resp. The terms of each policy, and their coverage amounts, vary. The Whites, however, do not indicate or offer any evidence to establish which, if any, of these exemplar policies was the one originally issued to them. Nor do they propose any link between the exemplar policies and the terms of the policy they argue was originally issued to the them. *Compare Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 975 F.2d 1130, 1131 (5th Cir. 1992) (finding evidence of types of coverage, policy numbers, dates of coverage, and coverage amounts, and that the policy covered incidents such as the one in question, insufficient to establish the contents of a missing insurance policy under Texas law

where there was no evidence introduced of the actual terms of the policy), *with Bituminous Casualty Corp. v. Vacuum Tanks, Inc.*, 75 F.3d 1048, 1051-52 (5th Cir. 1996) (finding, upon remand, the terms of lost policies sufficient upon evidence that the terms of the missing policies matched those of the specimen policy).

The Whites state only that "[i]f a jury determines that Plaintiff did not re-issue the correct policy to Defendants, and applied the incorrect level of benefits, then there will be other evidence presented regarding the benefit levels of other available policies that Plaintiff marketed and sold to Mississippi customers in May and June of 2005." Whites' Resp. at p. 21. This is insufficient for purposes of defeating summary judgment. Without more, a jury would be left to speculate as to the contents of the actual policy issued to the Whites. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 433 (5th Cir. 2005) (*quoting Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999)). The Court concludes that there is no triable issue remaining on the controlling policy or its terms.

C.  Extent of Time's Liability Under the Certificate

The benefit schedule found in certificate No. 0058461251 limits the calendar year and lifetime maximum benefits for each insured to $100,000.00, and $2,000,000.00, respectively, regardless of the service provided. Policy, attached as Ex. "A" to Time's Am. Compl. It also limits payment for covered outpatient services to "$2,500 Maximum Benefit per Calendar Year for each Insured." *Id.* The

introductory paragraph to the entire "Covered Medical Services" subsection states:

> Covered Medical Services include only Covered Charges for the services and supplies listed in this certificate. *Charges are subject to all the terms, limits and conditions of this plan.* After you have paid any Deductible or Copayment, we will pay benefits for Covered Charges at the Rate of Payment up to the Out-of-Pocket Limit *and subject to the Calendar Year and Lifetime Maximum Benefit.*

*Id*. (emphasis added). Twenty-four medical services are listed beneath the introductory paragraph as covered medical services. Twelve of the services are followed by the statement that they are "subject to the Outpatient Calendar Year Maximum" of $2,500.00, while the remaining twelve, including hospital services and healthcare practitioner services, do not contain this explicit statement.

There is no serious dispute that hospital services and healthcare practitioner services were provided to Larrye White on an outpatient basis, and are the only services at issue here. By its terms, the policy defines hospital services as including *both* inpatient and outpatient services. *Id*. Inpatient treatment is defined as a stay of at least twenty-four (24) hours, and where a charge is made for room and board or observation. *Id*. Outpatient treatment is defined as "[s]ervices, supplies or treatment received at a Hospital or other licensed medical facility for a stay of less than 24 hours on other than an Inpatient basis." *Id*.

Time asserts that its liability for hospital and healthcare practitioner services rendered on an outpatient basis is limited to $2,500.00 per calendar year, and at most, the policy limits benefits to $100,000.00 per calendar year, pursuant to the outpatient services and calendar year maximums identified in the benefit

schedule. Am. Compl. [108] ¶ 13. The Whites counter that the services provided are subject to neither the $2,500.00 outpatient cap, nor the $100,000.00 calendar year limitation, but are instead subject only to the Rate of Payment schedule, providing 75% for network services and 55% non-network services.

The interpretation of an insurance policy presents a question of law. *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998). In Mississippi, a court should read the policy as a whole, considering all the relevant portions together and, "whenever possible, should give operable effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). When an insurance contract is plain and unambiguous, it will be enforced as written. *State Farm Mut. Auto Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981). "[A]mbiguity is present when policy language is susceptible of two or more reasonable interpretations." *Miss. Farm Bureau Cas. Ins. v. Britt*, 826 So. 2d 1261, 1265 (Miss. 2002). Where the policy's terms are ambiguous, such ambiguity is to be resolved in favor of the insured and against the insurer who drafted the contract. *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382-83 (5th Cir. 1998).

The introductory paragraph of the "Covered Medical Services" section is clear. The policy requires the application of the limits identified in the benefit schedule to covered medical services charges. This would necessarily include application of the $2,500.00 outpatient services calendar year maximum. All charges not otherwise subject to the outpatient calendar year maximum are

nonetheless subject to the calendar year maximum benefit of $100,000.00 per insured.  The question becomes whether, in "read[ing] the contract as a whole, so as to give effect to all its clauses," *Provident Life and Acc. Ins. Co. v. Goel*, 274 F.3d 984, 992 (5th Cir. 2001) (*quoting Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992)), the policy's explicit restrictions on twelve of the covered services to an outpatient calendar year maximum render the policy ambiguous and subject to two or more reasonable interpretations as to application of the limit to hospital and healthcare practitioner services.

The Court is of the opinion that the Whites' interpretation of the policy, that hospital services and health care practitioner services provided on an outpatient basis are subject only to the Rate of Payment schedule and not the calendar year limitations, is not reasonable based upon the clear language of the policy.  To read the policy as the Whites suggest would ignore the following italicized portions of the introductory paragraph of its "Covered Medical Services" section:

> *Charges are subject to all the terms, limits and conditions of this plan.* After you have paid any Deductible or Copayment, we will pay benefits for Covered Charges at the Rate of Payment up to the Out-of-Pocket Limit *and subject to the Calendar Year and Lifetime Maximum Benefit.*

Policy, attached as Ex. "A" to Time's Am. Compl.(emphasis added).  Under Mississippi law, "[a]ll parts [of a policy] must be harmonized as much as reasonably possible, and no part or word can be stricken unless the result is fairly inescapable." *Miss. Farm Bureau Mut. Ins. Co. v. Walters*, 908 So. 2d 765, 769 (Miss. 2005).

In giving effect to all parts of the policy, it is clear that any treatment

provided as a hospital service, which is "received at a Hospital or other licensed medical facility for a stay of less than 24 hours on other than an Inpatient basis," would constitute an outpatient service, and would be subject to the outpatient services cap of $2,500.00 per calendar year per insured. All treatment provided as a hospital service which is provided on an inpatient basis would be limited by the calendar year maximum benefit of $100,000.00, unless explicitly limited elsewhere in the policy.

Such a reading of the policy is in harmony with *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007), to which the Whites cite. *Guidry* found a policy ambiguous where the insurer's interpretation of certain terms rendered other terms in the policy nugatory. Here, however, Time's interpretation of the policy does not render any terms of the policy nugatory. Under the reading which Time suggests, all parts of the policy can be harmonized. The Whites' interpretation, however, does nullify certain provisions of the contract. It is therefore not "reasonable" in the Court's view.

Based upon the foregoing, the Court finds that those services provided on an outpatient basis to Larrye White as hospital and health care practitioner services were subject to the outpatient calendar year maximum of $2,500.00. All charges not otherwise subject to the outpatient calendar year maximum were nonetheless subject to the calendar year maximum benefit of $100,000.00 per insured. Summary judgment in favor of Time on the Whites' counterclaims for breach of contract, negligence, gross negligence, bad faith, and emotional distress for refusal

to pay under the policy is appropriate.

D.     The Whites' Remaining Counterclaims

Time has advanced arguments that: (1) the Whites have failed to plead their fraud and misrepresentation claims with particularity pursuant to FED. R. CIV. P. 9(b); (2) it owed no duty to issue the coverage the Whites claim they applied for, and that their negligence, gross negligence, and emotional distress claims should therefore be dismissed; and (3) the Whites' estoppel, fraud, and misrepresentation claims should be dismissed on grounds that the Whites cannot establish reasonable reliance.  The Whites did not brief these remaining counterclaims.  Nor have the Whites contested Time's coverage argument as they relate to Patsy White.  The Whites have not carried their summary judgment burden on these counterclaims, and summary judgment in favor of Time is therefore appropriate.

## III. CONCLUSION

The Court concludes that summary judgment in favor of Time is appropriate on each of the Whites' counterclaims.  With no issues remaining for trial, Time is further entitled to a declaratory judgment in its favor.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [155] of Plaintiff/Counter-Defendant Time Insurance Company for Summary Judgment, filed on or about October 18, 2010, in the above captioned cause, should be and hereby is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants/Counter-Plaintiffs Patsy White and the Estate of Larrye J. White's

counterclaims are dismissed with prejudice, that a declaratory judgment is **GRANTED** in favor of Plaintiff/Counter-Defendant Time Insurance Company in accordance with Paragraph 18 of Time's Amended Complaint for Declaratory Judgment [108], and that this civil action is hereby dismissed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all remaining pending Motions are hereby **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 17th day of March, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE